THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>Electronic Devices seized during the execution of a federal search warrant at Game Time to include:<br><br>Apple iPhone – (IMEI: Not Yet Accessible)<br>iPad (Serial #: DMPDW056LMV9) | Case No. 2:22-cr-203<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Hailey Barraco, a Special Agent with Immigration and Customs Enforcement, Homeland Security Investigations ("ICE/HSI"), United States Department of Homeland Security, being first duly sworn, depose and state under oath as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I have been a Special Agent (SA) with the United States Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) since April of 2019. I am currently assigned to the Assistant Special Agent in Charge (ASAC) Charleston, SC office. I am a graduate of the Federal Law Enforcement Training Center and the HSI Special Agent Training Academy. My responsibilities as a Special Agent include investigating crimes involving the importation and exportation of merchandise contrary to law, controlled substances, and child exploitation. I have also worked, assisted, and observed numerous examples of the sale of counterfeit good and intellectual property rights investigations.

1

2. Prior to becoming a Special Agent, I was a Financial Crime Investigator (FCI) with the Florida Department of Financial Services (DFS) in Tampa, FL for approximately four years. As an FCI, I worked cases related to welfare fraud and misuse of public benefits. While employed with DFS, I was a member of the United Counsel of Welfare Fraud (UCOWF).

3. This Affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – electronic devices – which are currently in the possession of law possession, and the extraction from the electronic devices of electronically stored information described in Attachment B.

4. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. I have set forth only the facts that I believe are necessary to establish probable cause to believe that contraband and evidence, fruits, and instrumentalities of the trafficking of counterfeit goods or services in violation of Title 18, United States Code, Section 2320 are presently located within the electronic devices.

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

5. The property to be search is navy blue Apple iPhone with a black case[1] and an apple iPad (Serial #: DMPDW056LMV9, gold and white, no case) found at GAME TIME upon execution of a search warrant on March 8, 2022, hereinafter the "SUBJECT DEVICES." The

---

[1] The serial number for this electronic device is not accessible until access to the device is granted pursuant to the search warrant.

SUBJECT DEVICES are currently located at 3950 Faber Place Drive, North Charleston, SC 29405.

6. The applied for warrant would authorize the forensic examination of the SUBJECT DEVICES for the purpose of identifying electronically stored data particularly described in Attachment B.

## INVESTIGATION OVERVIEW AND STATEMENT OF PROBABLE CAUSE

7. In August 2021, the South Carolina Secretary of State provided information to HSI Charleston regarding a store believed to be selling counterfeit goods such as clothing, shoes, and accessories typically sold in authorized retail stores with trademark brands such as Nike and Jordan. The items were being sold out of a storefront in the Northwoods Mall called GAME OVER SPORTS.

8. An employee with the City of North Charleston verified the business license submitted for the storefront GAME OVER SPORTS was in the name of LANARD SMITH with phone number (843) 532-7178.

9. Records checks of LANARD ISAAC SMITH indicate a prior federal counterfeiting charge and conviction in 2008. Records show that his brother, RAYNARD JACOB SMITH was also involved and convicted of counterfeiting in 2008.

10. A query of the Advanced Targeting System (ATS), which tracks cargo coming in and out of the country shows approximately 48 shipments arriving at GAME OVER SPORTS in the name of RAY SMITH, LARRY SMITH, and GAME OVER SPORTS between April 17, 2021 through November 16, 2021. These shipments are coming from a variety of countries such as Japan, Malaysia, China, and Hong Kong. The shipments are labeled to contain items such as casual shoes, sports shoes, women's sport suit, men's running shoe, etc.

11. ATS also shows 33 shipments arriving at 600 Westbury Mews Drive, #E, Summerville, SC 29485, in the name of RAYNARD SMITH and ISAAC SMITH between June 2019 and May 2021. These shipments are coming from a variety of countries such as Germany, Japan, Taiwan, China, Hong Kong, Italy, and the United Kingdom. The shipments are labeled to contain items such as men's athletic footwear, men's sport shoes, men's coat, clothes, men's sneakers, cotton mask, etc.

12. Records checks indicate that at least seven of the shippers – for the shipments described in paragraphs 8 and 9 – have been associated with Intellectual Property Violations.

13. On or about September 28, 2021, HSI Charleston utilized a member of the South Carolina Secretary of State to purchase suspected counterfeit apparel from GAME OVER SPORTS. The purchase included a Nike Kobe Bryant Los Angeles Lakers basketball jersey. The Jersey was priced at $150.00. The individual working the store also provided a Lakers facemask for free and failed to charge taxes on the purchase. The total amount paid for the jersey was $150.00. The jersey was reviewed by Investigator Rick Hawks, a representative with Blazer Investigations[2] specializing in Intellectual Property Right matters. Investigator Hawks later notified HSI Charleston the Lakers Jersey purchased from GAME OVER SPORTS was counterfeit.

14. On December 14, 2021, HSI Charleston executed a federal search warrant at GAME OVER SPORTS located at 2150 Northwoods Boulevard, H-600, North Charleston, SC 29406. Based on confirmation from Blazer Investigations, the merchandise within the store was counterfeit and were seized by HSI Charleston. LANARD SMITH was present at the location and

---

[2] Blazer Investigations represents a variety of trademark and copyright holders, including, but not limited to, Nike.

opened the store front at approximately 1030 hours. The retail sales value of the counterfeit merchandise seized from GAME OVER SPORTS has been determined to be $285,815.00.

15. During the December 14, 2021, federal search warrant execution, electronic devices were seized from GAME OVER SPORTS and LANARD SMITH. A subsequent warrant to search the electronic devices was signed by the Honorable Mary Gordon Baker. A review of the electronic devices evidenced conversations between RAYNARD SMITH and LAYNARD SMITH pertaining to the purchase and sale of goods. During their conversations, they sent photographs of sports jerseys and Nike shoes to each other and discussed a warehouse that the shipments from a "jersey connect" can be sent to. LANARD SMITH specifically sent a message to RAYNARD SMITH stating "... I work in that store for you every day for free and lift toys!!! Don't play!!"

16. On February 8, 2022, a federal grand jury returned a three-count indictment against RAYNARD SMITH and LANARD SMITH charging them with Conspiracy to Traffic in Counterfeit Goods pursuant to 18 U.S.C. § 371 and two counts of Trafficking Counterfeit Goods pursuant to 18 U.S.C. § 2320(a)(1).

17. RAYNARD SMITH was interviewed by the United States Probation Office on February 17, 2022, and informed USPO officer Jenniann Benefield that he was self-employed at Game Time, which is located at the SUBJECT PREMISES.

18. On February 23, 2022, RAYNARD SMITH appeared for his initial appearance in front of the Honorable Mary Gordon Baker. RAYNARD SMITH was released on bond with conditions. ECF No. 23. One condition of bond was that the RAYNARD SMITH not violate federal state or local law while on release.

19.   On February 28, 2022, HSI Charleston utilized a member of the South Carolina Secretary of State to purchase suspected counterfeit apparel from GAME TIME. A suspected counterfeit Atlanta Falcons facemask was purchased for $11.00. The individual working the store failed to charge taxes on the purchase. The facemask was reviewed by Investigator Rick Hawks, a representative with Blazer Investigations[3] specializing in Intellectual Property Right matters and confirmed to be counterfeit.

20.   RAYNARD SMITH was confirmed to be at GAME TIME during the undercover buy on February 28, 2022.

21.   On March 1, 2022, the Honorable Molly H. Cherry executed a federal search warrant for GAME TIME.

22.   During the execution of the search warrant on March 8, 2022, the SUBJECT DEVICES were recovered and seized from GAME TIME. Pursuant to the warrant executed on March 1, 2022, the seizure of the SUBJECT DEVICES was authorized but a further warrant was required to perform a forensic examination of the SUBJECT DEVICES.

23.   Based on my knowledge, training, and experience, individuals who engage in criminal activity which involve the ordering and selling of counterfeit merchandise typically use their cellphones or other forms of electronic devices to access the internet to order the goods. These individuals also keep ledgers or counts as to what was ordered, shipped, and sold on their electronic devices.

---

[3] Blazer Investigations represents a variety of trademark and copyright holders, including, but not limited to, Nike.

## TECHNICAL TERMS

24. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Records, documents, and materials: include all information recorded in any form and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

    b. Electronic Storage Device: Electronic storage devices include any device capable of electronic data storage which is defined as storage that requires electrical power to store and retrieve that data. Electronic storage devices include but are not limited to the following:

        i. Computers and computer storage devices including hard drives, diskettes, laser disks, multimedia cards, and others which may store the equivalent of thousands of pages of information.

        ii. Wireless telephones and other mobile devices such as tablets including popular devices such as iPads, Galaxy Tablets, and others with capabilities of storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.

25. Based on my training, knowledge and experience, and the experience of others with whom I have discussed this investigation, I know that the SUBJECT DEVICES have capabilities

that allow them to serve as a wireless telephone, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26.     Based on my knowledge, training, and experience, I know that electronic storage devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period on the device and can sometimes be recovered with forensics tools. These devices can also be used to make purchases or orders of suspected counterfeit clothing or store electronic ledgers of prior orders and sales. GAME TIME utilizes an electronic point of sale machine which could provide documentation on previous sales and is considered an electronic storage device.

27.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICES were used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICES because:

      a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      b.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for

        "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

28. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICES consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

29. *Manner of execution.* Because this warrant seeks only permission to examine

devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

30. As described above and in Attachment B, this application seeks permission to search for records that might be found on the SUBJECT DEVICES, in whatever form they are found.

31. Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated, and that the contraband, property, evidence, fruits and instrumentalities of these offenses, more fully described in Attachment B, are located on the SUBJECT DEVICES described in Attachment A. I respectfully request that this Court issue a search warrant for the SUBJECT DEVICES described in Attachment A, authorizing the search for evidence more fully described in Attachment B.

32. I am aware that the recovery of data by a computer forensic analyst takes significant time; much the way recovery of narcotics must later be forensically evaluated in a lab, digital evidence will also undergo a similar process. For this reason, the "return" inventory will contain a list of only the tangible items recovered from the premises. Unless otherwise ordered by the Court, the return will not include evidence later examined by a forensic analyst.

33. Assistant United States Attorney Amy Bower has reviewed this Affidavit.

Respectfully submitted,

*Hailey Barraco*
Hailey Barraco
Special Agent
Homeland Security Investigations

Sworn to me via telephone or other
Reliable electronic means and signed by me
Pursuant to Fed. R. Crim. P. 4.1 and 4(d) or
41(d)(3), as applicable

March 9, 2022

s

*Molly H. Cherry*
The Honorable Molly H. Cherry
United States Magistrate Judge